IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEBORAH LAUFER,

                Plaintiff,                OPINION AND ORDER

v.

                                            20-cv-617-wmc

LILY POND LLC C SERIES,

                Defendant.

---

Plaintiff Deborah Laufer brought this suit against defendant Lily Pond LLC C Series, the alleged owner of the Quality Inn & Suites in Beaver Dam, Wisconsin, alleging violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, and its implementing regulation 28 C.F.R. § 36.302(e)(1).  This is the one of 25 cases brought by Laufer, a self-identified "compliance tester," against places of lodging throughout Wisconsin, asserting the same ADA violation.  Specifically, plaintiff seeks:  (1) a declaratory judgment that defendant is in violation of Title III of the Americans with Disabilities Act and its implementing regulation; (2) injunctive relief requiring defendant to bring its website into compliance and monitoring policies to maintain the website; and (3) attorney's fees and costs pursuant to 42 U.S.C. § 12205.

In this and the other lawsuits filed by Laufer, the court directed plaintiff to show cause why they should not be dismissed for lack of standing.  (Dkt. #9.)  Having reviewed her response, as well as other cases discussing the standing requirements for plaintiffs asserting an information injury, the court is satisfied that plaintiff has standing to proceed.

BACKGROUND[1]

Plaintiff Deborah Laufer is an Alachua County, Florida, resident who visited defendant's website. Laufer qualifies as an individual with disabilities as defined by the Americans with Disabilities Act. She must use a wheelchair or cane, has limited use of her hands, and is vision impaired. For this reason, when she visits websites, Laufer seeks specific information on the accessibility of the rooms. A hotel's accessibility accommodations present a serious concern for those with limitations like the plaintiff's. These range from specific parking needs, accessible entrances and wheelchair accessible routes to elevators and hotel rooms, and from doors, doorknobs and locks to toilets, faucets, sinks, and tubs/showers within the rooms themselves.

Plaintiff visited the defendant's website and found that it did not adequately address the accessibility accommodations of its rooms. For example, the websites did not provide information on accessible rooms, did not allow for booking of accessible rooms, and did not have sufficient information about accessibility, including lack of information about the availability of a roll-in shower, whether there are accessible entrances to the hotel, availability of any accessible rooms, etc. She surveyed the websites of third parties such as https://app.thebookingbutton.com/; www.expedia.com; www.hotels.com; www.orbitz.com; and www.agoda.com, as well as defendant's direct website. Neither these third party websites nor the hotels' direct websites included sufficient information on accessible rooms for her to evaluate whether a stay there would be possible.

---

[1] Plaintiff pleads the same allegations in the other 24 complaints.

As noted, plaintiff acknowledges being a "tester," someone who investigates and identifies businesses that are not in compliance with the ADA. She intends to revisit the websites pursuant to a personal system where she maintains a list of the hotels she has sued with relevant dates, court judgments, and deadlines for enactment of those judgments. In response to the court's show cause order, Laufer submitted an affidavit averring that she intends to travel to Wisconsin once COVID-19 abates and travel is safely resumed. (Laufer Aff. (dkt. #12-1) ¶ 5.)

OPINION

Plaintiff argues standing is appropriate here because she has suffered discriminatory harms from visiting the defendant's allegedly inadequate website. Unlike most ADA claims with regard to websites, this is not an allegation that the website itself is inaccessible -- rather, plaintiff contends that she was injured by the lack of information on these websites. The court requested plaintiff show standing in regard to the "injury in fact" requirement, in light of *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019), another case involving website ADA compliance. For the following reasons, the court concludes that plaintiff has suffered an "injury in fact" and established standing in this case.

Standing is required to bring a claim in district court because Article III of the Constitution extends the judicial power to "all Cases . . . [and] Controversies." U.S. Constitution, Art. III, § 2. A plaintiff must "meet three key requirements to establish standing: (1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." *Scherr v. Marriott International, Inc.*, 703 F.3d 1069, 1074 (7th Cir.

2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1991)).

Plaintiff's "injury in fact" is at issue in this case. In order to be concrete and particularized, the claimed injury must "[affect] the plaintiff in a personal and individual way." *Access Living of Metro Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 613 (7th Cir. 2020) (quoting in part *Lujan v. Defs. of Wildlife*, 504 U.S. at 560, n.1). Where plaintiff seeks injunctive relief, it must also show a "real and immediate threat of future violations of [his or her] rights." *Scherr*, 703 F.3d at 1074 (internal citations omitted).

Here, plaintiff alleged informational injury from the failure of the defendants to post accessibility information on their websites and dignitary harm stemming from that failure. (Compl. (dkt. #1) ¶ 12.) Each harm has been alleged sufficiently for her to proceed, at least as to standing.

I. Informational Injury

A lack of information may constitute an injury in fact when "the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998); *see also Public Citizen v. U. S. Dep't of Justice*, 491 U.S. 440, 449 (1989). "In such cases, a plaintiff "need not allege any *additional* harm beyond" his failure to receive information that the law renders subject to disclosure." *Carello*, 930. F.3d at 835 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

Here, plaintiff asserts that the text of the ADA and its enacting regulation compel disclosure of accessibility accommodations on the defendant's webpage. Specifically, plaintiff cites the following language:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

42 U.S.C. § 12182(a). Thus, the ADA prohibits discrimination and is violated where discrimination based on disability is encountered.

The implementing regulations further prohibit discrimination in making reservations at places of public accommodation, such as hotels. In relevant part, the regulation at issue states:

> Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –
>
> . . . .
>
> (ii) identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

28 C.F.R. § 36.302(e)(1)(ii). That same subsection required compliance by March 15, 2012. 42 U.S.C. § 36.302(e)(3).

Plaintiff reasonably argues that "any means" extends to online reservations systems, as the "gateway to [defendant's] hotels." (Compl. (dkt. #1) ¶ 12.) The text of the regulation provides for the disclosure of accessible features in the same medium where it books reservations. Thus, where defendant's website allows for the booking of reservations online, it must provide information in detail that allows the plaintiff to "assess independently whether a given hotel or guest room meets his or her accessibility needs."

5

Plaintiff further argues that to require specific intent to visit the defendant's hotel ignores the cognizable injury for lack of information statutorily mandated. In *Carello*, plaintiff's disability required him to use a screen reader to access the information on a webpage. Plaintiff alleged dignitary and informational harm because a bank's webpage was incompatible with the screen reader software. The Seventh Circuit rejected plaintiff's standing argument based on informational injury, finding that plaintiff was legally barred from using the information and, thus, had no concrete or particularized harm. *Carello*, 930 F.3d at 833. In rejecting the plaintiff's claims, however, the court still recognized that "an informational injury occurs when the defendant refuses to provide the plaintiff with information that a law, typically a sunshine law, entitles him to obtain and review for some substantive purpose." *Id.* at 835.

Here, Laufer alleges that she suffered that very injury: failure to obtain information she was entitled to under the ADA to plan her trip due to defendant's deficient website. For the reasons provided by the district court in *Laufer v. U.L.S.T.*, No. 20 C 3527, 2020 WL 6487199 (N.D. Ill. Nov. 4, 2020), the court agrees that her complaint sufficiently alleges informational injury. Specifically, in *U.L.S.T.*, on facts nearly identical to those presented to this court, the defendant argued that plaintiff failed to sufficiently allege "concrete" injury because she had no plans to stay at defendant's hotel. 2020 WL 6487199, at *2. The Northern District of Illinois rejected defendant's broad reading of *Carello* as establishing "a tester plaintiff's lack of an affirmative intent to utilize the defendant's services necessarily means that she lacks standing." *Id.* at *4. Instead, the court explained that *Carello* held "an ADA plaintiff lacks standing when there is an

6

independent legal barrier to her ability to utilize the defendant's services," while effectively acknowledging the availability of information and dignitary harm stemming from inaccessible websites absent such a legal barrier. *Id.* Accordingly, the court found that even without proof of an intent to visit, plaintiff's asserted need for the information to "make meaningful choices for travel," and the resultant "frustration and humiliation as the result of discriminatory conditions present," established informational and dignitary "injury in fact." *Id.*

That plaintiff's "tester status" is not disqualifying finds further support in *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982). In that case, testers who did not intend to rent the property had standing when the defendant lied about the availability of housing units. *Id.* Regardless of the tester's intent, the Supreme Court held that the defendant's lie directly violated the Fair Housing Act and worked an injury in fact on the plaintiff tester. *Id.* at 373-74 ("A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute intended to guard against."). Although *Havens Realty* concerned an act of commission rather than omission, the decision certainly supports the proposition that discrimination can occur even in the context of a test situation, without inquiry into the tester's underlying motive. Here, the ADA created a right to be free from discrimination in evaluating the websites of "places of accommodation," which right is violated when required information is not provided. *See Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018) ("An informational injury is concrete if the plaintiff establishes that concealing information impaired her ability to use it for a substantive purpose that the statute envisioned.").

Finally, to allege a statutory right to the information, plaintiff must allege a "real and immediate threat" of future rights violations to satisfy a request for injunctive relief. Where a denial of required information constitutes an "injury in fact," failure to remedy the website would work a continuing and imminent future rights violation. *See Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 WL 6528974, at *11 (S.D.N.Y. Dec. 4, 2019) ("Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. . . . He is only required to have established a reasonable inference that he intended to return to the Website."). Since plaintiff alleges that she intended to revisit the website to check for updates, a similar, future harm is sufficient to work a continuing, real and immediate threat. (Compl. (dkt. #1) ¶¶ 10-11.)[2]

## II. Dignitary Harm

In addition to informational harm, plaintiff alleges dignitary harm arising from defendant's alleged non-compliance. In *Carello*, the Seventh Circuit expressed "no doubt that dignitary harm is cognizable; stigmatic injury is 'one of the most serious consequences' of discrimination." 930 F.3d at 834 (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)). Similarly, in the case of employment testers, the Seventh Circuit has found a lack of intent

---

[2] Plaintiff's complaint does not allege that she has any plans to travel to Wisconsin in the future, although plaintiff only included this allegation in her affidavit (dkt. #12-1) in response to this court's show cause order. (Dkt. #9.) Nonetheless, because it is not an event that occurred post-filing to provide standing, the court may consider it. *See Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999) (internal citations omitted) ("Where evidence pertinent to subject matter jurisdiction has been submitted, however, the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists."); *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019) ("To determine whether subject matter jurisdiction exists, a court may look past the complaint to any pertinent evidence." (internal citations omitted)).

to secure a job did not erase the injuries plaintiffs experienced. *See Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 300 (7th Cir. 2000) ("The fact that they had no interest in actually working for the company . . . does not rule out the prospect that they *were* injured. We have long recognized that humiliation, embarrassment, and like injuries . . . constitute cognizable and compensable harms stemming from discrimination.").

When dignitary harm personally affects the plaintiff, it is elevated from "abstract stigmatic injury" to concrete injury. *See Carello*, 930 F.3d at 834. In this case, Congress intended to "protect people with disabilities against stigmatic injury" by enacting the ADA. *See Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citing *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)); *Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004) ("Moreover, the ADA, like the FHA provisions at issue in *Havens Realty*, embodies a congressional intent to eradicate discrimination." (granting standing under Title II of the ADA)). Thus, the connection between plaintiff and defendant in this case separates her from the general population visiting the website, as she intends to use the information to evaluate places to stay for a future trip. (Laufer Aff. (dkt. #12-1) ¶ 5.) Accordingly, the court further finds that plaintiff's alleged dignitary harm provides a separate basis for finding standing.

### III. Certification for Interlocutory Appeal

For the reasons described above, the court concludes that plaintiff has standing to pursue her claims. Still, the court is cognizant that other district courts in other circuits have reached the opposite conclusion with respect to this very plaintiff. *E.g.*, *Laufer v. Naranda Hotels, LLC*, No. CV SAG-20-1974, 2020 WL 7384726 (D. Md. Dec. 16, 2020);

9

*Laufer v. Galtesvar Om, LLC*, No. 1:20-CV-00588-RP, 2020 WL 7416940 (W.D. Tex. Nov. 23, 2020), *report and recommendation adopted sub nom. Laufer v. Galtesvar Om, LLC.*, No. 1:20-CV-588-RP, 2020 WL 7416195 (W.D. Tex. Dec. 15, 2020); *Laufer v. Laxmi & Sons, LLC*, No. 119CV01501BKSML, 2020 WL 2200207 (N.D.N.Y. May 6, 2020). From the court's review, two cases ruling against Laufer are now pending appeal in the Fourth and Fifth Circuits. In a number of recent opinions, the Seventh Circuit also appears to have raised the bar in establishing standing in the Fair Debt Collection Practices Act context, which may have some application to ADA compliance tester cases. *See, e.g.*, *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, No. 19-3514, 2020 WL 7350278 (7th Cir. Dec. 15, 2020); *Larkin v. Fin. Sys. of Green Bay, Inc.*, No. 18-3582, 2020 WL 7332483, at *1 (7th Cir. Dec. 14, 2020); *Spuhler v. State Collection Serv., Inc.*, No. 19-2630, 2020 WL 7351098, at *1 (7th Cir. Dec. 15, 2020).

The question of standing presented in this case and some 24 other similar cases brought by Laufer in this court, as well as in other districts in this circuit, is a controlling question of law. Moreover, there is not only substantial ground for difference in opinions as to the answer to that question, but a split among district court opinions in which no circuit court has weighed in, at least as yet. As such, the court concludes that this is one of the rare cases that warrants immediate review by the Seventh Circuit. At minimum, it would be helpful for this court to understand whether the Seventh Circuit's recent FDCPA opinions alter this court's and the *U.S.L.T.* courts understanding of *Carello*. Finally, since many, if not most, of these cases tend to be resolved by default or small, even nuisance

settlements, the failure to address the issue definitively upfront has real world consequences.[3]

Accordingly, the court will take the uncommon step of certifying this opinion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

ORDER

IT IS ORDERED that:

1) The court is satisfied that plaintiff has standing to pursue her ADA claims.

2) For the same reason, defendant's motion for Rule 11 sanction (dkt. #14) is DENIED.

3) The court CERTIFIES this opinion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

4) Consistent with this order, the court will STAY all proceedings, pending expiration of the 10-day period for defendant to appeal or, if an appeal is requested, then pending resolution of any interlocutory appeal.

Entered this 30th day of December, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[3] Two of Laufer's cases already have default judgment hearings set, while others are scheduled for preliminary pretrial conferences with Judge Crocker. Pending resolution of this court's certification, the court will stay all of Laufer's cases.